IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TONY PHILLIPS,<br><br>Defendant. | Case No. CR11-0027<br><br>REPORT AND RECOMMENDATION |

On the 29th day of March 2011, this matter came on for hearing on the Motion to Suppress (docket number 23) filed by the Defendant on March 14, 2011. The Government was represented by Assistant United States Attorney Robert L. Teig. Defendant Tony Phillips appeared in person and was represented by his attorney, Jane Kelly.

## I. PROCEDURAL HISTORY

On February 8, 2011, Defendant Tony Phillips was charged by Indictment with one count of being a felon in possession of a firearm.[1] On March 25, 2011, Defendant entered a conditional plea of guilty to the Superseding Indictment, and the Report and Recommendation regarding the guilty plea is pending before Chief Judge Linda R. Reade.

On March 14, 2011, Defendant timely filed the instant motion to suppress. The Government filed its resistance on March 23, 2011.

## II. ISSUE PRESENTED

When Defendant, a convicted felon, was asked to step out of a vehicle following a traffic stop, a handgun was found in his front pocket. Defendant argues that the traffic stop was not supported by reasonable suspicion or probable cause, and that he was improperly detained.

---

[1] On March 8, 2011, the Indictment was superseded to correct the name of the Defendant. *See* docket number 18.

## III. RELEVANT FACTS

During the early afternoon of October 27, 2010, Cedar Rapids Police Officer John O'Brien and another officer were attempting to locate Gregory Hollie, for whom an arrest warrant had been issued. There had been a shooting at 1422 4th Avenue SE in Cedar Rapids two days earlier, and the officers had information that Hollie had a pistol when the shooting took place and had turned that pistol over to another subject who was arrested with the pistol. An investigation also revealed information that Hollie, a convicted felon, possessed multiple firearms beyond the one that was recovered.[2] Hollie was described as a black male in his mid-30s, who is 6 feet tall and weighs 215 pounds. O'Brien had not had any prior contact with Hollie, but had seen his "booking photo."

It was believed that Hollie was staying at 1418 4th Avenue SE. As the officers were driving westbound in the 1400 block of 4th Avenue SE, they observed a "male black subject" walking eastbound on the sidewalk adjacent to 4th Avenue, approaching 1418. Officer O'Brien testified that he and his partner believed that the subject was Gregory Hollie. As the officers drove past, they observed the subject on the sidewalk turn up to the front of 1418.[3] The officers could not tell, however, whether the subject went into the house or to the area between 1418 and 1422.

The officers proceeded to the end of the block, where 4th Avenue intersects with 14th Street SE. The officers parked near the intersection, with the intent "to sit in the area and see if the suspect was going to leave the residence." Because they did not have a view of the back of the residence, however, the officers decided to reposition their vehicle to a church parking lot located on the west side of 14th Street. In that way, the officers could see the alley behind the house.[4]

---

[2] Hollie's arrest warrant was for criminal mischief, which was apparently unrelated to the shooting incident.

[3] The officers were not in uniform and were traveling in an unmarked black Ford Edge.

[4] An aerial photograph of the area was introduced as Government's Exhibit 1.

2

As the officers were maneuvering their vehicle to "get a better angle at the front of the residence and be able to see the alley at the same time," they observed a white vehicle in the process of pulling into a parking area behind 1418. The officers then apparently circled back down 14th Street until they got to 4th Avenue, and then pulled back into the parking lot. When the officers returned to the parking lot, they saw the white vehicle coming west down the alley towards 14th Street. As the vehicle pulled onto 14th Street, the officers observed a white female driver, a white female passenger in the front seat, and "the same subject that we had seen walking on 4th Avenue SE, that we believed was Gregory Hollie, was now in the back of the vehicle seated behind the driver." Officer O'Brien testified that he was "sure" that the person the officers had seen walking in front of the house was the same person who was now seated in the back seat of the car. According to O'Brien, his "bald head really stuck out."

The white vehicle turned north on 14th Street and then east at the next intersection, on Bever Avenue. The officers pulled the vehicle over a few blocks later. Officer O'Brien conceded on cross-examination that there had been no traffic violations or another independent reason to stop the vehicle. O'Brien testified that when the occupants of the vehicle noticed the officers, the rear passenger, whom O'Brien believed to be Hollie, started "fidgeting" or "manipulating" something to the right side of his body.

After the vehicle was stopped, Officer O'Brien and his partner approached the vehicle and requested identification from the occupants. O'Brien testified that "at that point I was convinced that it was Mr. Hollie from all of the information that I had at that time." According to O'Brien, when Defendant reached for his wallet in his right rear pants pocket to retrieve his identification, he turned his body away from O'Brien, which struck O'Brien as "odd." O'Brien described it as "a really unnatural maneuver." This concerned O'Brien, because Hollie was known to be armed, they had just left the area where a shooting had occurred two days earlier, "and now I'm getting this weird maneuver in the car to shield his body from me to get his wallet out of his back pocket."

While this was going on, Officer O'Brien asked Defendant if he had just come from 1418 4th Avenue. Defendant initially said no. When O'Brien told Defendant that he had just seen him "up there," Defendant then admitted that he had come from 1418 and had given $40 to a friend named Coolio.

Defendant produced an Iowa non-driver identification card with the name "Tony Phillips." It had a photograph on the card, but Officer O'Brien testified that he was not immediately able to determine whether the person sitting in the back seat was the same person shown on the identification card. According to O'Brien, when he observed Defendant's "bizarre behavior," he "took a step back to use the rear pillar of the roof of the vehicle as a form of cover." According to O'Brien, officers are taught that it is "tactically sound" to keep a barrier between himself and the suspect. O'Brien then concluded that it was safer to have the suspect step out of the vehicle "so I was able to see both of their hands and I would be able to get a better look at the subject's face without having to bend over and expose myself to them." Accordingly, Defendant was instructed to exit the vehicle.

Immediately upon Defendant exiting the vehicle, Officer O'Brien asked if he had any weapons in his possession. Defendant nodded yes and admitted that he had a pistol in his right front pocket. At that time, Defendant was placed in handcuffs. According to O'Brien, he still believed the subject was Hollie and, given the shooting two days earlier, "it was the proper thing to do for our safety." After getting "a good look at his face," however, O'Brien determined that Defendant matched the photograph on his identification card, the card was valid, and Defendant was not Hollie.

## IV. DISCUSSION

Defendant raises two issues in support of his motion to suppress. The first is straightforward: Did the officers have reasonable suspicion to stop the vehicle in which Defendant was a passenger? Defendant's second argument is that "the officers had no

reason to detain Tony Phillips any further once they determined he was not Gregory Hollie."[5]

### A. Did the Vehicle Stop Violate the Fourth Amendment?

The Fourth Amendment protects persons "against unreasonable searches and seizures." *U.S. Const. Amend. IV.* "Stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of the Fourth Amendment." *United States v. Prokupek*, 632 F.3d 460, 462 (8th Cir. 2011) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). "To constitute a reasonable seizure, a traffic stop must be supported by, at a minimum, 'a reasonable, articulable suspicion that criminal activity' is occurring." *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011).

The Government argues that the vehicle stop was constitutionally permitted because the officers had a reasonable belief that one of the occupants had an outstanding warrant for his arrest. "An officer may stop and question a person if there are reasonable grounds to believe that person is wanted for past criminal conduct." *United States v. Barlow*, 308 F.3d 895, 898 (8th Cir. 2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417 n.2 (1981)). Here, based on a booking photo and a physical description, Officer O'Brien and his partner believed that the subject whom they saw walking on the sidewalk near 1418 4th Avenue was Gregory Hollie. O'Brien testified further that he was "sure" that the person the officers saw in the back of the white vehicle was the same person whom they had seen walking a few minutes earlier. The Court finds that Officer O'Brien was credible in his testimony. Accordingly, the officers had a reasonable basis to believe that an occupant in the white vehicle had an outstanding warrant for his arrest, thereby justifying a stop of the vehicle. *United States v. Shields*, 519 F.3d 836, 837 (8th Cir. 2008)(believing that an occupant of a vehicle had a valid warrant for his arrest, officers were justified in stopping the vehicle).

Obviously, the officers were mistaken in their belief that the person they had seen was Gregory Hollie. Accordingly, the Court must consider whether their mistake negates

---

[5] *See* Defendant's Brief (docket number 23-1) at 4.

a finding of reasonable suspicion to stop the vehicle. The test applied by the Court is whether the mistake was an "objectively reasonable one." *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007) ("Even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an 'objectively reasonable one.'"). *See also United States v. Bueno*, 443 F.3d 1017, 1024 (8th Cir. 2006) ("Neither mistake of law nor mistake of fact renders a traffic stop illegal so long as the officer's actions were objectively reasonable in the circumstances."); *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005) ("The validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or fact, was an objectively reasonable one.").

Here, Officer O'Brien testified that based on a booking photo and physical description, he and his partner believed the person they saw walking on 4th Avenue and in the back of the white car was Gregory Hollie. The officers were mistaken in that fact. Based on all of the circumstances, however, including the fact that the person was seen walking up to the residence where the officers believed Hollie was staying, the Court concludes that the mistake was objectively reasonable. Since the officers reasonably believed that an occupant in the white vehicle had a warrant for his arrest, the vehicle stop was constitutionally permitted. *Shields*, 519 F.3d at 837 (officers were justified in stopping a vehicle based on a mistaken "tip" that a fugitive was located in the vehicle).

### B. Was Defendant illegally detained?

Next, Defendant asserts that even if there was valid cause to stop the vehicle, "the officers had no reason to detain Tony Phillips any further once they determined he was not Gregory Hollie." Defendant argues that as soon as he "handed the officer his identification, and the officer read the name, any legitimate purpose for the traffic stop no longer existed."[6] In support of his argument, Defendant cites *United States v. Simpson*, 439 F.3d 490 (8th Cir. 2006). There, an officer initiated a foot pursuit of a suspect whom

---

[6] *Id.*

he knew had a warrant outstanding for his arrest. When the suspect took off his coat and hat while running, however, the officer realized he was not the person for whom a warrant had been issued. "Despite this realization," the officer continued to chase the suspect because he believed the suspect "intentionally concealed his identity and had taken flight to evade" the officer. *Id.* at 493. As it turned out, there was also a warrant outstanding for that person's arrest. In concluding the evidence obtained as a result of the seizure was admissible, the Court "assumed" that the defendant's initial seizure violated the Fourth Amendment.[7]

The Court believes that the facts in *Simpson* are easily distinguishable from those in the instant action. In *Simpson*, the officer continued a foot pursuit *after* he had established that the suspect was not the person whom he was seeking. In the instant action, however, Defendant admitted possession of a handgun on his person *before* Officer O'Brien verified Defendant's identity. Because of Defendant's furtive movements and odd behavior, O'Brien was justified in not exposing himself while establishing the suspect's identity. At that time, O'Brien reasonably believed that the person with whom he was dealing was armed and had been involved in a shooting two days earlier. O'Brien was authorized to order Defendant out of the vehicle in order to verify his identity. *Arizona v. Johnson*, 555 U.S. 323 (2009) (following a lawful traffic stop, a passenger may be required to exit the vehicle and be subjected to a pat-down for officer safety); *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008) (during a valid traffic stop, "both the driver and passenger may be ordered to exit the vehicle in the interests of officer safety"). Immediately after exiting the vehicle, and before his identity could be fully established, Defendant admitted having a handgun in his front pocket.

---

[7] The district court found that there "was insufficient suspicion to justify an investigative stop," the government apparently did not contest that issue, and the Eighth Circuit assumed that fact "for purposes of this appeal." *Simpson*, 439 F.3d at 796.

## V. SUMMARY

Prior to stopping the white vehicle, Officer O'Brien believed that an occupant of the vehicle had a warrant outstanding for his arrest. While O'Brien was mistaken in that belief, the Court finds that the mistake was objectively reasonable. Accordingly, the vehicle stop was not violative of the Fourth Amendment.

Following the stop, Officer O'Brien was permitted to establish the identity of the persons found in the vehicle. In that regard, O'Brien was constitutionally permitted to require the occupants to exit the vehicle. That action seems particularly prudent in this case, since O'Brien believed that he was dealing with an armed fugitive who had been involved in a shooting two days earlier. While O'Brien could have patted Defendant down upon exiting the vehicle, Defendant admitted in response to O'Brien's questions that he had a firearm in his front pocket. I cannot find any constitutional violation here.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that Defendant's Motion to Suppress (docket number 23) be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on March 29, 2011.*

DATED this 11th day of April, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA